UNITED STATES, Appellee,

v.

Richard E. PARKER, Airman
Apprentice U.S. Navy,
Appellant.

No. 67,916.

NMCM 91 0963.

U.S. Court of Military Appeals.

Argued Feb. 1, 1993.

Decided Feb. 24, 1993.

For Appellant: *Lieutenant Karen M. Miller, JAGC, USNR* (argued); *Lieutenant Mary Anne Razim-Fitzsimons, JAGC, USNR* (on brief).

For Appellee: *Lieutenant Ralph G. Stiehm, JAGC, USNR* (argued); *Colonel T.G. Hess, USMC* (on brief).

---

*Opinion of the Court*

COX, Judge:

A general court-martial sitting at Naval Air Station, Whidbey Island, Oak Harbor, Washington, convicted appellant, contrary to his pleas, of raping and forcibly sodomizing one female servicemember, and of breaking and entering into the barracks room of another female servicemember and soliciting her to commit sodomy, violations of Articles 120, 125, and 134, Uniform Code of Military Justice, 10 USC §§ 920, 925,

and 934, respectively.[1] This appeal concerns the correctness of the Court of Military Review's decision not to consider a post-trial affidavit.[2]

Under the circumstances of this case, we hold that the Court of Military Review did not err in declining to consider the affidavit, and we affirm. We do so, however, without prejudice to appellant's right to petition for new trial. *See* Art. 73, UCMJ, 10 USC § 873; RCM 1210, Manual for Courts–Martial, United States, 1984.

## I

The sole issue raised by appellant at the Court of Military Review was the sufficiency of the evidence of the rape-forcible sodomy charges. While this issue was pending at that court, however, appellant moved to file what is purported to be the sworn affidavit from another servicemember, who was not a witness at appellant's court-martial. According to the document, the affiant had "met ... [appellant] and took an interest in his case." On her own initiative, she telephoned the rape-sodomy victim (hereafter, the "prosecutrix") long-distance. Later, the affiant accepted a collect call from the prosecutrix. According to the affiant, the prosecutrix freely discussed, "for approximately one (1) hour," the episode which resulted in appellant's conviction. During this conversation, according to the affiant, the prosecutrix made numerous admissions that not only were grossly inconsistent with her prior sworn testimony, but also were grossly inconsistent with appellant's guilt. In her statement, the affiant related the nature of these discrepancies with some specificity.

Armed with this document, appellant asked the Court of Military Review "to evaluate ... [the] affidavit together with the record of trial and ... [to] dismiss the findings of guilty to all charges and specifications based upon reasonable doubt as to guilt." Alternatively, appellant asked that

1. The officer panel sentenced appellant to a dishonorable discharge, confinement for 5 years, total forfeitures, and reduction to E–1. The convening authority approved the sentence, and the Court of Military Review affirmed in an unpublished opinion dated January 29, 1992.

2. The issue, as framed by appellant, is as follows:

court "for a rehearing on both findings and sentence," or "for a *DuBay* hearing to examine both ... [the affiant and the prosecutrix] under oath and in an adversarial setting...." Motion to NMCMR at 3 (Jan. 7, 1992). High indeed were appellant's hopes for the court-martial obliterating impact of this mystery-sourced, *ex parte* piece of paper! Notably, appellant did not undertake to demonstrate entitlement to a "new trial" under the requirements of RCM 1210.

Nevertheless, the Court of Military Review declined even to receive the document. By order dated January 16, 1992, it reasoned that its review authority under Article 66(c), UCMJ, 10 USC § 866(c), was "limited to the evidence of record, which does not include assessing the weight to be given an affidavit from an individual who purports to have spoken to the victim and principal witness against the appellant 11 months after trial." (Citations omitted.) Clearly, the court had a strong basis for its decision. Article 66(c) charges the Courts of Military Review to

affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, *on the basis of the entire record*, should be approved. *In considering the record*, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.

(Emphasis added.) *See United States v. Bethea*, 22 USCMA 223, 46 CMR 223 (1973).

Before this Court, appellant again eschews the motion for new trial. As before, he argues that the Court of Military Review erred in failing to weigh the affidavit in its *de novo* factual review. In the alternative, he now contends that the Court of Military Review erred in failing first to order a hearing to assess the credibility of the affiant—and then to weigh the affida-

WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW ERRED IN REFUSING TO ACCEPT A THIRD–PARTY AFFIDAVIT WHICH IMPEACHED THE TESTIMONY OF AN IMPORTANT GOVERNMENT WITNESS.

vit along with the evidence of record. We disagree.

## II

■ First, a digression into the distinction between "rehearing" and "new trial" is in order. The two proceedings may be indistinguishable once you get there, but it's how you get there that matters. When a reviewing authority or appellate court in retrospect finds error in the court-martial proceedings of such magnitude that a conviction or sentence cannot stand, that authority will set aside the findings and/or sentence. Under certain circumstances not important here, a "rehearing" may be authorized. The key element is the conclusion of error in the proceedings. Appellant identifies no error in his trial, other than his general disagreement with the court-martial's ultimate conclusion on findings.

A "new trial," by contrast, is obtainable by an accused when the requirements of RCM 1210(f)(2) are met. These are:

A new trial shall not be granted on the grounds of newly discovered evidence *unless the petition shows* that:

(A) The evidence was discovered after the trial;

(B) The evidence is not such that it would have been discovered by the petitioner at the time of trial in the exercise of due diligence; and

(C) The newly discovered evidence, if considered by a court-martial in the light of all other pertinent evidence, would probably produce a substantially more favorable result for the accused.

(Emphasis added.) The burden in a new trial petition is squarely on the petitioner.

■ If genuine, the tendered affidavit falls into the category of "newly discovered evidence." The mere existence of the affidavit, however, does not equate to error in the proceedings so as to entitle appellant to a "rehearing."

## III

Next, we return to appellant's assertion that the Court of Military Review erred in failing to receive and weigh the affidavit directly. Appellant points to an unpublished opinion [3] of the United States Navy–Marine Corps Court of Military Review (*United States v. Ray*, NMCM No. 88–3629 (August 25, 1989)), wherein that court, according to appellant, "in the interest of justice, accepted a sworn post-trial recantation of the alleged rape victim's trial testimony, and dismissed the finding of guilty to the rape charge." Final Brief at 10. Counsel advance this decision for the proposition that Courts of Military Review have considered affidavits such as that herein.

■ We note, however, that a recantation by a victim, if verified or conceded by the prosecution, is quite different from a purported new witness who emerges with untested information long after a trial. Moreover, Courts of Military Review are something like the proverbial 800–pound gorilla when it comes to their ability to protect an accused. Frequently, we have acknowledged their "awesome, plenary, *de novo* power of review" under Article 66(c). *United States v. Cole*, 31 MJ 270, 272 (CMA 1990). "A clearer *carte blanche* to do justice would be difficult to express" was our observation in *United States v. Claxton*, 32 MJ 159, 162 (CMA 1991). Thus, the question before us is not whether a Court of Military Review *can*, in the interests of justice, receive and consider an affidavit on the merits of a case. *Cf. United States v. Bethea*, 22 USCMA 223, 46 CMR 223 (1973). The question is whether that court erred in *refusing* to consider this *ex parte* document *on the merits*. Article 66(c) resolves that question adversely to appellant.

## IV

■ This is not to suggest that affidavits have no place in appellate practice. *See United States v. McCarthy*, 2 MJ 26, 28 n. 2 (CMA 1976). Many years ago, in the context of post-trial claims of unlawful command interference with courts-martial, we had occasion to comment on use of affidavits. As we noted:

In the nature of things, command control is scarcely ever apparent on the face of the record, and, where the facts are in

---

3. Appellate counsel refer to this case without providing a copy as an appendix to their brief. This violates our Rule 24. *See United States v.*

*Clifton*, 35 MJ 79, 85 (CMA 1992) [Rule 18(d)(iii) ]; 86 [Rule 24(c) ].

dispute, appellate bodies in the past have had to resort to the unsatisfactory alternative of settling the issue on the basis of *ex parte* affidavits, amidst a barrage of claims and counterclaims.

*United States v. DuBay*, 17 USCMA 147, 149, 37 CMR 411, 413 (1967). Our response was to order a limited hearing, conducted by a duly-designated military judge, for the purpose of developing specific evidentiary backgrounds and making appropriate factual determinations. The affidavit, then, played a role in triggering this process.

Similarly in *United States v. Polk*, 32 MJ 150, 152 (CMA 1991), wherein we considered a *"DuBay"* hearing to examine an appellate claim of ineffective assistance of trial defense counsel, we noted:

Contrary to state and federal practice, these claims do not come to us through post-conviction attacks on the verdict and sentence, where hearings are held and evidence is heard, upon which judges make factual findings and conclusions of law for an appellate court to review and consider. *See* 28 USC § 2254. Claims come to us instead in the form of affidavits or even unsworn allegations. There is no mechanism set out in the Uniform Code of Military Justice for this Court or the Courts of Military Review to evaluate such post-conviction claims. There are provisions permitting an accused to seek a new trial on the limited "grounds of newly discovered evidence or fraud on the court." Art. 73, UCMJ, 10 USC § 873.

*See also United States v. Scott*, 18 MJ 629 (NMCMR 1984), *rev'd*, 24 MJ 186 (CMA 1987).

With like rationale, we and the Courts of Military Review have employed the *DuBay* mechanism in a growing miscellany of circumstances where extra-record fact determinations were necessary predicates to resolving appellate questions. *E.g., United States v. Moore*, 28 MJ 366, 368 (CMA 1989)(requiring trial counsel to clarify basis set out in affidavit for exercising peremptory challenge); *United States v. Reece*, 25 MJ 93, 95 (CMA 1987)(ordering *in camera* inspection of evidence as requested by the

defense at trial); *United States v. Zayas*, 24 MJ 132, 136 (CMA 1987) (determining substance and quality of testimony of would-be defense witness, where grant of testimonial immunity improperly withheld); *United States v. Payton*, 23 MJ 379, 381–82 (CMA 1987) (determining whether privileged defense information was communicated to prosecutors and, if so, whether accused was prejudiced); *United States v. Copening*, 32 MJ 512 (ACMR 1990)(propounding series of questions to be resolved concerning trial judge's inadvertent, *ex parte* communication with trial counsel), *aff'd*, 34 MJ 28 (CMA 1992); *United States v. Scott*, 18 MJ at 631–32 (giving convening authority option of ordering *DuBay* inquiry into adequacy of civilian defense counsel's representation, ordering a rehearing on the charges, or dismissing the charges).

However, the *DuBay* process has never been used to retry the merits of a case; its purpose is merely to clarify collateral or predicate matters.

## V

■ That brings us to appellant's complaint that the Court of Military Review erroneously failed to order a *DuBay* hearing. It was not so clear, in his motion before the Court of Military Review, what appellant envisioned the *DuBay* hearing would accomplish. Clearly, he saw it as an opportunity to pit the affiant against the prosecutrix in a sort of mini-trial, but where it was to go from there was not suggested. Before this Court, appellant is more specific: Having judged the credibility of the affiant, the Court of Military Review should have melded her testimony with the record evidence in arriving [again] at a determination of sufficiency of the evidence on the merits. That, however, would be an abuse of the *DuBay* process. We hold that the Court of Military Review committed no error in declining to order a *DuBay* hearing on the grounds requested.

Still open to appellant is the procedure expressly designed for this type of situation—the petition for new trial based on

newly discovered evidence. *See* RCM 1210. Further, notwithstanding the foregoing discussion, nothing limits an appellate court to the face of such petition and accompanying affidavits in deciding whether a new trial is appropriate. Should the matters presented warrant it, the appellate court can order a *DuBay* hearing *for the express purpose of assisting it in determining whether the petition for new trial should be granted and a new trial ordered.* What witnesses or evidence may be necessary to resolve such questions will depend on the circumstances of the given case. Petitions for new trial may be filed "any time within 2 years after approval by the convening authority of a court-martial sentence." Art. 73; RCM 1210(a). In the instant case, the convening authority approved the sentence on March 29, 1991.

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges CRAWFORD and GIERKE concur.

WISS, Judge (concurring in part and in the result):

I concur generally in the majority opinion and in the ordered disposition of this appeal. I write only to expressly not join the language in the second paragraph of Part III that might be inferred to suggest that, so long as the Court of Military Review's actions are in favor of an accused, its power is unbounded.

Even a court with "awesome, plenary, *de novo* power of review" and with *"carte blanche* to do justice" is not unrestricted. No court is free to act beyond the perimeter of its legal mandate, whether acting on behalf of an individual accused or on behalf of the people through the prosecution. There are *some* places where even "the proverbial 800–pound gorilla" is not free to roam. *See, e.g., United States v. Bethea,* 22 USCMA 223, 46 CMR 223 (1973). Since I believe that several questions relating to the extent of the powers of the Courts of Military Review presently are unresolved, I do not join in any verbiage that might prove to have been misleading in that regard.

The legal answer to appellant's argument that is summarized in the opening paragraph of Part III comes at the end of that part: Whether a Court of Military Review in some case in the past has accepted documents such as the one in issue here does not translate into a legal *duty* to accept them. As the majority puts it, the question is not whether a Court of Military Review *can* accept such a document (a question I do not need to address here); rather, it is whether a court *must* accept it. 36 MJ at 271. Thus properly viewed, I agree with the majority that there is no legal basis to any argument that the court below here erred in refusing to do so.